**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

FREDDY JOSE ARGUELLES,      :
                                 :
            Plaintiff,        :
                                 :
v.                              :      CASE NO. 4:18-cv-212-CDL-MSH
                                 :
DEPARTMENT OF HOMELAND    :
SECURITY, *et al.*,               :
            Defendants.   :
_____:

## <u>ORDER AND RECOMMENDATION</u>

Pending before the Court is Plaintiff Freddy Jose Arguelles's motion to reopen this case and enforce the parties' joint stipulation (ECF No. 26). For the reasons stated below, it is recommended the motion be denied.

### BACKGROUND

Arguelles, a native and citizen of Venezuela, was granted lawful permanent residence in 2006. *Arguelles v. U.S. Att'y Gen.*, 661 F. App'x 694, 695-96 (11th Cir. 2016). On October 5, 2012, he pleaded guilty to conspiracy to violate the Arms Export Control Act in violation of 22 U.S.C. § 2778(b)(2). *Id.* at 696. On February 11, 2015, an immigration judge ("IJ") rejected his request for asylum and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT") and ordered his removal from the United States. *Id.* at 700-02. The Board of Immigration Appeals ("BIA") dismissed his appeal on July 23, 2015, and denied his motion to reopen on December 7, 2015. *Id.* at 703-04. The Eleventh Circuit denied his

emergency motion to stay his removal, and he was removed from the United States to Venezuela on December 22, 2015. *Id.* at 704, 715. Once there, Arguelles was placed in prison immediately. *Id.* at 704. The Eleventh Circuit denied his petition for review on November 23, 2016. *Arguelles*, 661 F. App'x at 695-96.

On March 6, 2017, the BIA granted Arguelles's motion to reopen proceedings and remanded the record to the IJ for further proceedings.[1] Pl.'s Mot. for Temporary Restraining Order ("TRO") Ex. A, at 3, ECF No. 15-2. At some point in late 2017, Arguelles was released from prison in Venezuela on some form of supervised release. Pl.'s Mot. for TRO Ex. C, at 5, 10, ECF No. 15-4; Pl.'s Reply Ex. A, at 69, ECF No. 29-1. On September 26, 2018, a hearing was held before the IJ, but Arguelles could not appear because he was in Venezuela. Pl.'s Mot. for TRO Ex. E, at 4, ECF No. 15-6. Further, the Department of Homeland Security ("DHS") refused to coordinate Arguelles's return to the United States, and the IJ concluded there was no authority for conducting the hearing via video conference. *Id.* at 4-6. The IJ then ordered Arguelles's removal *in absentia*. *Id.* at 5-6. The IJ entered a written order on October 16, 2018. *Id.* at 6.

The same day the IJ entered the written order, Arguelles filed his complaint for mandamus relief and declaratory judgment (ECF No. 1) in this Court.[2] In the Complaint,

---

[1] Unless otherwise noted, citations to the record are to the document number and electronic screen page number shown at the top right of each page by the Court's CM/ECF software.

[2] In his complaint, Arguelles named as defendants in their official capacities the Secretary of DHS, the Deputy Director of United States Immigration and Customs Enforcement ("ICE"), the acting Executive Associate Director of Homeland Security Investigations ("HSI") for ICE, the Chief Counsel for ICE's Office of Chief Counsel, ICE's Atlanta Field Office Director, and the United States Attorney General. Compl. ¶¶ 8-14, ECF No. 1. Unless otherwise specified, the Court will refer to these officials collectively as "Defendants."

Arguelles alleged Defendants violated the Administrative Procedures Act ("APA") by not facilitating his return to the United States following the reopening of his case.  Compl. ¶¶ 30-37.  He also alleged Defendants violated his Fifth Amendment Due Process rights by not allowing him to be present for his removal proceedings.  *Id.*  ¶¶ 38-41.  Finally, Arguelles claimed that by not facilitating his return for removal proceedings, Defendants violated his Fifth Amendment right to counsel and 8 U.S.C. § 1362.  *Id.*  ¶¶ 42-43.  Among the relief Arguelles requested was for the Court to order Defendants to either facilitate conducting removal proceedings via video or telephonic hearings or facilitate his return to the United States.  Compl. 23.

On March 23, 2019, Defendants moved to dismiss Arguelles's complaint, arguing the Court's jurisdiction was barred by the REAL ID Act of 2005 ("Act"), 8 U.S.C. § 1252, specifically 8 U.S.C. § 1252(a)(5) and (b)(9).[3]  Defs.' Mot. to Dismiss 4-6, ECF No. 12. Defendants also argued Arguelles failed to exhaust his administrative remedies by not appealing the removal order to the BIA and then, if the appeal was unsuccessful, filing a petition for review with the Eleventh Circuit.  *Id.* at 6-7.  Finally, Defendants argued the

---

[3]   The Government especially relied on subsection (b)(9).  This provision states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.   Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Court did not have the authority to grant the relief Arguelles requested, including ordering the embassy in Venezuela—which was apparently closed at the time—to reopen so Arguelles could appear from there via telephone or video for his removal proceedings, or ordering the Government to allow his admission into the United States. *Id.* at 8-10.

On April 1, 2019, Arguelles filed an emergency motion for a TRO and asked the Court to immediately order Defendants to issue him a travel document to return to the United States or facilitate video or telephonic hearings in immigration court proceedings. Pl.'s Mot. for TRO 10, ECF No. 15. On April 12, 2019, the Court held a telephone conference with the parties' counsel and ordered that they file supplemental briefs or provide notice of settlement by April 19, 2019. Minute Sheet, ECF No. 19. On April 19, 2022, the parties notified the Court they had reached a "Stipulation" agreeing to settle the case and jointly moved the Court to retain jurisdiction to enforce it. Joint Mot. 1, ECF No. 21. Three days later, they filed the Stipulation (ECF No. 23). The Stipulation provided that the Defendants named in the Complaint, and bound by the terms of the stipulation, included DHS and the Department of Justice ("DOJ")—through the office of the Attorney General—ICE, and the Executive Office of Immigration Review ("EOIR"). Stip. 2, ECF No. 23. Under the agreement, Defendants agreed they would not object to Arguelles appearing at immigration proceedings via video conference and would cooperate in good faith to avoid any logistical problems with Arguelles's participation by video conference. *Id.* The parties also agreed they would file a joint motion for remand with the BIA to return the case to the IJ for further proceedings. *Id.* at 3. The crux of the parties' current dispute concerns the final two sentences of the Stipulation, which state:

> During the immigration court proceedings under 8 U.S.C. § 1229a, Defendants will not raise jurisdictional objections to any legal argument or request for relief from removal based on the fact that Plaintiff is not physically present within the territory of the United States. Defendants will not challenge before the immigration court Plaintiff's assertion that the immigration court has jurisdiction over Plaintiff's removal proceedings even though the Plaintiff will testify from abroad.

*Id.* On April 24, 2019, the Court granted the parties' joint motion, dismissed the case with prejudice, but retained jurisdiction to enforce the Stipulation. Order, ECF No. 24.

Consistent with the parties' agreement, on May 10, 2019, Arguelles and DHS filed a joint motion for remand with the BIA, which was granted on August 2, 2022.[4] Pl.'s Reply Ex. B, at 3, ECF No. 29-2. On October 11, 2022, the parties appeared before the IJ for a master calendar hearing. Resp'ts' Ex. 2, at 2, ECF No. 28-2. Pursuant to the stipulation, Arguelles was allowed to attend the hearing via video conference from Venezuela. Pl's Mot. to Reopen 3, ECF No. 26. However, instead of scheduling a hearing to consider whether Arguelles actually faces torture in Venezuela, the IJ *sua sponte* raised the issue of whether Arguelles was eligible for CAT relief in light of the fact he was already in the Venezuela. Resp'ts' Ex. 2, at 11, 13. The IJ stated he was "not raising a jurisdictional issue," recognized he was bound by the Stipulation not to raise jurisdiction, and concluded he had jurisdiction. *Id.* at 13. He specified, however, that CAT only provided "prospective" relief and in order to be eligible for relief, the applicant cannot already be in the nation from which he or she is seeking to avoid torture. *Id.* at 13. The IJ relied on 8

---

[4]  Arguelles's counsel represented to the IJ that the BIA remanded the case "solely" for consideration of CAT relief. Resp'ts' Ex. 2, at 14, ECF No. 28-2.

C.F.R. § 1208.16.[5]  *Id.*  The IJ did not reach a final decision at the hearing but instead allowed the parties to submit briefs on the issue.  *Id.* at 22.  On November 22, 2022, the IJ notified the parties at a master calendar hearing that he was denying Arguelles's application for CAT relief and a written order was forthcoming.  Pl.'s Mot. for Hr'g Ex. A, at 8, ECF No. 33-1.  The IJ issued his written decision on December 21, 2022.  *Id.* at 1.

In the meantime, on October 26, 2022, Arguelles filed his emergency motion to reopen this case to enforce the stipulation (ECF No. 26).  He alleged Defendants—and especially the EOIR through the actions of the IJ—violated the stipulation by raising a jurisdictional objection to CAT relief.  Mot. to Reopen 4.  His requested relief included a demand that the Court order the IJ to "conduct proceedings to determine whether Plaintiff faces continued torture as defined by [CAT]."  *Id.* at 6.  In his latest motion for a hearing filed on January 6, 2023, however, Arguelles requests the Court order Defendants to provide him with travel documents to the United States.[6]  Pl.'s Mot. for Hr'g 3, ECF No. 33.

## DISCUSSION

The only issue before the Court is whether Defendants violated the Stipulation.  The

---

[5]  This regulation provides, *inter alia*, that "[t]he burden of proof is on the applicant for withholding of removal . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).

[6]  Arguelles's counsel stated in September 2018 that Arguelles believed he could leave Venezuela on a commercial flight if he had the proper travel documents.  Pl.'s Reply Ex. A, at 44.  In the most recent hearing in October 2022, the IJ inquired about how an order granting CAT relief would be implemented, and Arguelles's counsel replied that the IJ should just consider the torture issue and "[l]eave the logistics of what happens next to" immigration officials.  Resp'ts' Ex. 2, at 19-20.

Court is not tasked with deciding whether Defendants violated the APA or Arguelles's due process rights by not returning him to the United States following the BIA's reopening of his case as alleged in Arguelles's original complaint.[7]  This clarification is important because the parties do not address the law governing interpretation of settlement agreements.

A settlement agreement is a contract and subject to principles of contract law.  *In re Arrington*, 293 B.R. 76, 79 (Bankr. M.D. Ga. 2003).  Here, because the parties include federal agencies and obligations of the United States, federal common law principles apply. *See Eatmon v. Briston Steel & Iron Works, Inc.*, 769 F.2d 1503, 1516 (11th Cir. 1985) ("Federal law controls since the executive order conciliation agreement was entered into pursuant to authority conferred by federal statute and the rights of the parties to the agreement derive essentially from a federal source."); *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 n.4 (11th Cir. 2000) (per curiam) (holding that federal common law should be applied in reviewing settlement agreements "in only rare instances," including, *inter alia*, "rights and obligations of the United States"); *Moore v. U.S. Dep't of State*, 351 F. Supp. 3d 76, 88 (D.D.C. 2019) ("A settlement agreement between one private party and a federal agency—like any contract with the federal government—is governed by federal common law."  (internal quotation marks omitted)). "When determining what particular doctrine to apply in a particular suit, however, the court

---

[7]  A similar claim was rejected in *Ezenabo v. Customs and Border Protection*, No. 18-cv-13584, 2019 WL 2122951, at *2-3 (E.D. Mich. May 15, 2019), but that case did not involve a lawful permanent resident.

will often select a rule of state law." *Begner v. United States*, 428 F.3d 998, 1004-05 (11th Cir. 2005) (internal quotation marks omitted).  In this case, since the settlement agreement was filed in a Georgia district court and involved proceedings at the immigration court in Stewart County, Georgia, the Court will look in part to Georgia contract law.  *Id.* at 1005 (applying Georgia contract law in part "because most of the events occurred in Georgia").

> Under Georgia law, courts interpreting a contract engage in a three-step process:
>
> The trial court must first decide whether the contract language is ambiguous. If it is, the trial court then applies the applicable rules of contract construction in OCGA § 13–2–2.  If an ambiguity still remains, it must be resolved by the trier of fact.  In construing a contract, courts must give words their usual and common meaning.  And the entirety of the agreement should be looked to in arriving at the construction of any part.  The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others.

*Blueshift, Inc. v. Advanced Computing Techs., Inc.*, 273 Ga. App. 802, 805 (2005) (punctuation and internal citations omitted).  In addition to state law, "[w]hen applying federal common law to contract cases, courts generally look to the *Restatement (Second) of Contracts* for guidance." *Defs. of Wildlife v. Salazar*, 877 F. Supp. 2d 1271, 1292 (M.D. Fla. 2012).  So, the Court will also look to the RESTATEMENT (SECOND) OF CONTRACTS (AM. L. INST. 1981).

Applying these principles, the Court concludes Defendants have not violated the Stipulation.  First, Defendants complied with their obligation under the Stipulation to allow Arguelles to appear at immigration proceedings via video conference.  As acknowledged by Arguelles, he appeared at the October 11, 2022, master calendar hearing via WebEx.  Pl.'s Mot. to Reopen 3.  Arguelles suggests this was insufficient because a master calendar

hearing is not an "evidentiary" hearing.  Pl.'s Reply 6, 8, ECF No. 29.  The Stipulation, however, does not require that Arguelles be provided with an "evidentiary" hearing, but only that he be allowed to appear "in his ongoing immigration proceedings via video conferencing."  Stip. 2.  In fact, the word "evidentiary" does not appear anywhere in the Stipulation.  The nearest reference to something which could be considered evidentiary is a provision that "Defendants will not object to taking Plaintiff's testimony by video conference . . . ."  *Id.* at 3.  The fact the parties agreed that Arguelles's testimony could be taken by video conference is not equivalent to a mandate that an evidentiary hearing be held.

Second, the Court also finds that Defendants did not breach their agreement to not raise jurisdictional objections.  The parties have debated whether the IJ was bound by the Stipulation.  The Court need not decide the matter, however, because the IJ explicitly recognized he was bound by the Stipulation as it pertained to jurisdiction.  Resp'ts' Ex. 2, at 13.  The IJ further made clear, however, that his decision was not based on lack of jurisdiction.  *Id.*

Nevertheless, Arguelles argues the IJ violated the Stipulation by rejecting his claim on the basis of subject matter jurisdiction.  Pl.'s Mot. to Reopen 4.  It is true the IJ's written decision refers to the Stipulation as waiving any "personal jurisdictional objections based on [Arguelles's] presence beyond the United States," even though the Stipulation itself does not distinguish between personal and subject matter jurisdiction.  Pl.'s Mot. for Hr'g Ex. A, at 7.  Although none of the parties apply contract principles, Arguelles's argument raises an issue of whether the reference to "jurisdiction" in the Stipulation encompasses

9

both subject matter jurisdiction and personal jurisdiction, solely personal jurisdiction, or is ambiguous.

The Court agrees that the word "jurisdiction" could be ambiguous. *See Khalsa v. Weingberger*, 779 F.2d 1393, 1396 n.2 (9th Cir. 1985) (noting that "'jurisdiction' has many possible meanings, ranging from subject matter jurisdiction to the power to grant the relief requested"). However, even if "jurisdiction" as used in the Stipulation is ambiguous, the Court interprets it to mean solely personal jurisdiction. Otherwise, this provision in the Stipulation would be invalid. "[S]ubject-matter jurisdiction is 'the courts' statutory or constitutional *power* to adjudicate the case.'" *United States v. Bravo-De la Cruz Morante*, 375 F. Supp. 3d 707, 716 (S.D. Tex. 2019) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 643 (2002)). It cannot be forfeited or waived or conferred by action of the parties. *Id.* This includes the immigration courts because their power comes through Congress's passage of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et. seq. Id.* Interpreting the Stipulation in the manner suggested by Arguelles would allow the parties—including the IJ—to confer subject matter jurisdiction on the immigration court. "A construction that upholds a contract in whole is preferred; interpretations rendering a provision lawful are preferred to those that would render it unlawful and interpretations rendering a provision valid are preferred to those that would render it invalid." *In re Cherokee Run Country Club, Inc.*, 430 B.R. 281, 286 (Bankr. N.D. Ga. 2009) (citing O.C.G.A. § 13–2–2(4) and 11 SAMUEL WILLISTON & RICHARD A. LORD, WILLISTON ON CONTRACTS § 32:11 (4th ed. 2007)); *see also Stevenson v. Atlanta Mission Holding Corp.*, 72 Ga. App. 258, 261 (1945) ("An agreement capable of an interpretation

which will make it valid or legal will be given such interpretation if the agreement is ambiguous."); RESTATEMENT (SECOND) OF CONTRACTS §203 (AM. L. INST. 1981) ("In the interpretation of a promise or agreement or a term thereof . . . an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

Further, the Court cannot on its own determine whether Arguelles is eligible for CAT relief.  8 U.S.C. § 1252(b)(9).  Instead, that must be determined by the BIA and ultimately by the Eleventh Circuit on a petition for review.  The Court notes, however, that at least one Eleventh Circuit panel agreed with the IJ's interpretation of 8 C.F.R. § 1208.16(c).[8] *See Campbell v. U.S. Att'y Gen.*, 521 F. App'x 869, 872 (11th Cir. 2013) (per curiam) (upholding BIA's interpretation of 8 C.F.R. § 1208.16(c) that found a lawful permanent resident ineligible for CAT relief—despite his right to move to reopen—after he was removed to the country where he claimed he would be persecuted).

Finally, Arguelles argues Defendants have acted in bad faith because the purpose of the negotiations and Stipulation was "always" to provide him with "due process: the opportunity to be heard," which requires an evidentiary hearing.  Pl.'s Reply 8; Pl's Mot. for Hr'g 3.  He also contends the Stipulation was intended to bar "*all* arguments relating to Plaintiff's physical presence out of the United States," not just jurisdictional objections,

---

[8] Plaintiff relies on Judge Martin's concurrence in *Arguelles* to assert, "[T]here is no law that says a person has to be physically present in the United States to receive CAT.  Indeed, the law says the opposite."  Pl.' Mot. to Reopen 4 (citing *Arguelles*, 661 F. App'x at 714 n.2 (Martin, J., concurring)).  The Court has reviewed Judge Martin's concurrence and does not believe it supports Plaintiff's assertion.  In any event, the issue is one for the BIA and then possibly the Eleventh Circuit to resolve on a petition for review.

and that Defendants are "hid[ing] behind one word."  Pl.'s Reply 8 (emphasis added).  He asks the Court to enter an order that the IJ "comply with the Settlement Agreement" and "conduct proceedings on whether Plaintiff has suffered and is likely to suffer torture in Venezuela, irrespective of his physical location."  Pl.'s Mot. to Reopen 5.  The Court, though, is not free to rewrite the parties' agreement.  *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1119-20 (11th Cir. 1995).  As noted above, the Stipulation does not mandate an evidentiary hearing, and Arguelles's counsel signed the Stipulation explicitly referring to "jurisdictional objections."  Stip. 2.  Further, contrary to Arguelles's suggestion, the Stipulation benefits him.  Arguelles indicates he will appeal the IJ's written decision ordering his removal and denying CAT relief.  Pl.'s Mot. for Hr'g 2.  If the BIA and/or Eleventh Circuit agree with his contention that he is eligible for CAT relief despite being in Venezuela, then the provision in the Stipulation for video testimony will allow him to present evidence of torture remotely.

## CONCLUSION

For the reasons explained above, the Court **RECOMMENDS** that Arguelles's motion to reopen  (ECF No. 26) be **DENIED**.[9]  Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. Any objection should be no longer than **TWENTY (20) PAGES** in length.  *See* M.D. Ga. L.R. 7.4.  The District Judge shall make a de novo determination of those portions of the

---

[9]  In light of this recommendation, Arguelles's motion for hearing (ECF No. 33) is **DENIED**.

Recommendation to which objection is made.  All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 27th day of January, 2023.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE